UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DANIEL MARTIN SLIGHT, IV,

        Plaintiff,

    v.

SUE WASHBURN; G. MORAN; DR. LELAND
P. BEAMER; A. ASTORGA; M. DAVIES;
S. BLOOD; E. SUNDSTROM; M. PRICE;
J. BARRETTE; T. HOLTZ; S. POWELL;
JANE DOE; DUFLOUTH; S. WHITBREAD;
WARREN ROBERTS; and J. BUGHER,

        Defendants.

Case No. 2:21-cv-00925-MK

**OPINION AND ORDER**

**KASUBHAI, Magistrate Judge.**

    Plaintiff, an adult in custody (AIC) previously housed at the Eastern Oregon Correctional Institution (EOCI), filed suit under 42 U.S.C. 1983 and alleged that Defendants were deliberately indifferent to his health by failing to provide adequate medical treatment for a scabies infection. The parties have consented to resolution of this action by magistrate judge, and Defendants Price and Sundstrom now move for summary judgment. Upon review of the record and the parties'

- 1 -   OPINION AND ORDER

arguments, Plaintiff fails to raise a genuine issue of fact to defeat summary judgment, and Price and Sundstrom's motion is GRANTED.

## BACKGROUND

In early to mid-2019, Plaintiff developed an itchy, persistent rash.[1] Between September 2019 and January 2020, EOCI medical providers diagnosed Plaintiff with scabies and treated the infection with repeated doses of ivermectin. Baxter Decl. Ex. 1 at 2. Plaintiff was also prescribed hydrocortisone cream, an antibiotic, topical antifungal medication, urea cream, Vaseline, and oral prednisone to provide symptomatic relief. *Id.*; Price Decl. ¶ 5.

On February 12, 2020, Defendant Price, a nurse practitioner (NP), began treating Plaintiff. Price Decl. ¶ 5.[2] Plaintiff's symptoms had not resolved, and he told NP Price that prednisone was the only medication that helped alleviate his symptoms. *Id.* ¶ 6. NP Price prescribed prednisone and, considering the numerous treatments that had been ineffective, attempted to diagnose the underlying cause of Plaintiff's continued symptoms. *Id.*

On February 26, 2020, NP Price performed a skin biopsy on Plaintiff, which reflected mild dermatitis potentially caused by contact dermatitis or a drug reaction. *Id.* at ¶ 7. NP Price believed that Plaintiff's medications did not support a drug reaction as the cause of Plaintiff's symptoms. *Id.* Instead, NP Price ordered Plaintiff's clothes to be washed separately with a different detergent for ninety days to see if this remedy improved his symptoms. *Id.* ¶ 8.

In March 2020, Plaintiff's symptoms were reportedly improving, and the prescription for the topical ointment was renewed. Baxter Decl. Ex. 1 at 3.

---

[1] Plaintiff claims he developed a rash in January 2019 and Defendants state that it appeared in mid- to late 2019. I find this dispute immaterial.

[2] NP Price was present or assisted during Plaintiff's medical appointments in January 2020 with a different provider.

- 2 -   OPINION AND ORDER

In April 2020, Plaintiff returned to the EOCI infirmary and reported that his rash was again worsening. NP Price prescribed hydroxyzine, a topical antihistamine, and Plaintiff's providers began considering a dermatology consultation. *Id.*; Price Decl. ¶ 9.

On May 5, 2020, NP Price requested that the TLC (Therapeutic Level of Care) Committee approve Plaintiff's referral to a dermatologist. Price Decl. ¶ 10. The TLC Committee approved the dermatology referral if the continued use of hydroxyzine did not improve Plaintiff's symptoms. *Id.* NP Price requested a follow-up appointment with Plaintiff to establish that his continued symptoms supported the referral. *Id.*

On May 12, 2020, Plaintiff met with NP Price and reported that his symptoms were not improving. NP Price ordered laboratory testing to address the possibility that Plaintiff's persistent symptoms arose from a serious blood disorder. *Id.* ¶ 11; Baxter Decl. Ex. 1 at 3. NP Price also ordered the dermatology referral and prescribed topical lidocaine and an antibiotic for symptomatic relief. Price Decl. ¶ 11. Plaintiff's blood work was normal. Baxter Decl. Ex. 1 at 3.

In June 2020, NP Price prescribed prednisone, hydrocortisone, and a topical steroid to address Plaintiff's symptoms while he awaited his dermatology appointment. *Id.*; Price Decl. ¶ 13. NP Price also requested that the TLC Committee renew Plaintiff's prescription for hydroxyzine to treat his itching. *Id.* ¶ 14.

On July 7, 2020, Plaintiff was examined by an outside dermatologist and again diagnosed with scabies. Baxter Decl. Ex. 1 at 3. The dermatologist prescribed a treatment of permethrin cream, to be repeated in one week. Price Decl. ¶ 15. The dermatologist also directed that Plaintiff's bedding and clothing be washed and that he continue to use hydroxyzine to manage his symptoms. The same day, NP Price reviewed the dermatologist's findings and recommendations and ordered the permethrin cream per the dermatologist's instructions. *Id.*

- 3 -   OPINION AND ORDER

On August 11, 2020, Plaintiff had his last medical appointment with NP Price. *Id.* ¶ 16. Plaintiff reported that the permethrin treatment was helpful but had not completely resolved his symptoms. NP Price ordered a retreatment of permethrin and ivermectin in case the initial treatment had not cured Plaintiff's infection. *Id.* NP Price also ordered that Plaintiff's clothing and bedding be sealed for three days and washed in hot water. *Id.*; Baxter Decl. Ex. 1 at 3.

In September 2020, Plaintiff was seen by another EOCI provider due to persistent itching, and the TLC Committee approved Plaintiff's continued use of hydroxyzine for his symptoms. Baxter Decl. Ex. 1 at 4. Defendant Sundstrom, also an NP, was on the TLC Committee when it approved this prescription for hydroxyzine. *Id.*; Sundstrom Decl. ¶ 6.

On October 8, 2020, Plaintiff had a follow up appointment with the outside dermatologist. The dermatologist diagnosed "presumptive scabies without microscopic skin findings." Baxter Decl. Ex. 1 at 4. The dermatologist prescribed another course of ivermectin and permethrin cream, to be repeated in one week. The dermatologist also recommended that Plaintiff's clothing and bedding be washed in hot water the day after his treatment and that other AICs who had similar symptoms receive the same treatment. *Id.*

In December 2020, Plaintiff requested further treatment for scabies due to his continuing symptoms. *Id.* NP Sundstrom performed a chart review and requested that the TLC Committee approve another dermatology referral for Plaintiff, given the persistence of his symptoms amid various and repeated medical treatments. Sundstrom Decl. ¶¶ 7-8. The record does not reflect further examinations by an outside dermatologist.

In January 2021, Plaintiff received another course of permethrin cream and hydroxyzine for his recurrent rash. The record does not include further reports by Plaintiff of a rash or itching. Baxter Decl. Ex. 1 at 4.

- 4 -   OPINION AND ORDER

**DISCUSSION**

Plaintiff alleges that NPs Price and Sundstrom misdiagnosed his medical condition and rendered inadequate medical treatment for his scabies symptoms, resulting in unnecessary medical procedures, pain, and discomfort. *See* Sec. Am. Compl. at 4-9 (ECF No. 49).[3] Plaintiff claims that their alleged failure to provide effective treatment constituted deliberate indifference to his medical needs under the Eighth Amendment. NPs Price and Sundstrom move for summary judgment on grounds that they provided adequate treatment for Plaintiff's condition and did not disregard a known risk of harm to Plaintiff's health.

To prevail on their motion for summary judgment, Defendants must show that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Defendants must present evidence of record, together with affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If Defendants meet this burden, the burden shifts to Plaintiff to demonstrate the existence of a genuine issue of fact for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see* Fed. R. Civ. P. 56(c)(1).

The Court must construe the evidence and all reasonable inferences in favor of Plaintiff, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). The Court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec*, 475 U.S. at 587 (citation and quotation marks omitted).

---

[3] Plaintiff's captioned "3rd Amended Complaint" is only the second amendment.

Prison officials and physicians violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference to an AIC's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Deliberate indifference exists when a prison official knows that an AIC faces a substantial risk of serious harm and fails to take reasonable measures to abate the risk. *Id.*; *see also Farmer v. Brennan,* 511 U.S. 825, 837, 847 (1994); *Toguchi v. Soon Hwang Chung,* 391 F.3d 1051, 1057-58 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of harm exists,' but that person 'must also draw the inference.'" *Toguchi*, 391 F.3d at 1057 (quoting *Farmer*, 511 U.S. at 837).

Deliberate indifference to an AIC's serious medical needs may be manifested when prison officials deny, delay, or intentionally interfere with medical treatment, or by the way prison officials provide medical care. *Gamble*, 429 U.S. at 104-05; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). In any case, the indifference must be substantial; inadequate treatment due to negligence, inadvertence, or differences in judgment between inmates and medical personnel do not rise to the level of a constitutional violation. *Gamble*, 429 U.S. at 105-06; *Toguchi*, 391 F.3d at 1057. Similarly, a delay in providing medical treatment, without more, does not amount to a constitutional violation; the delay must have led to "significant harm" to sustain a claim of deliberate indifference to a serious medical need. *Hallett*, 296 F.3d at 746.

Given Plaintiff's continued symptoms and their alleged severity, he establishes the existence of a serious medical need. However, the undisputed facts of record fail to plausibly suggest that NPs Price and Sundstrom had the culpable mental state to support claims for deliberate indifference.

Plaintiff's argues that NP Price should have retested him for scabies in February 2020, referred Plaintiff to a dermatologist at that time, and discontinued the use of prednisone. *See* Pl.'s Resp. to Mot. Summ. J. at 13-16. However, when NP Price began treating Plaintiff in February 2020, Plaintiff already had been treated for scabies and reported improvement with prednisone, and NP Price did not believe Plaintiff showed clinical signs of another scabies infection. Price Decl. ¶¶ 5-6, 18. Instead, NP Price considered other causes of Plaintiff's continued symptoms and ultimately ordered a skin biopsy, laboratory testing, assessments for allergic reactions, and a dermatology referral. *Id.* ¶¶ 7-8, 10-12. Further, NP Price followed the dermatologist's directives and treated Plaintiff accordingly. *Id.* ¶ 15. NP Price also prescribed various medications to address Plaintiff's symptoms, including prednisone, hydroxyzine, lidocaine, methylprednisolone, hydrocortisone, and triamcinolone. *Id.* ¶¶ 6, 9, 11-16, 18; Baxter Decl. Ex. 1. Finally, NP Price ordered that Plaintiff's bedding and clothing be sealed and washed in hot water. *Id.* ¶¶ 8, 16.

Given this record, Plaintiff's dissatisfaction with NP Price's care implies negligence, at most, and "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Toguchi*, 391 F.3d at 1057. Rather, Plaintiff must present evidence plausibly suggesting that NP Price knowingly disregarded a substantial risk to his health. *Id.* at 1058 ("A prison official acts with 'deliberate indifference...only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'"). The record does not support an inference that NP Price consciously disregarded a substantial risk of harm to Plaintiff's health or failed to respond to a medical need that placed Plaintiff at risk of serious injury or wanton pain. *Farmer*, 511 U.S. at 834; *Gamble*, 429 U.S. at 104.

Plaintiff also fails to show deliberate indifference regarding the treatment approved by NP Sundstrom. Importantly, NP Sundstrom did not directly treat Plaintiff; instead, she approved

- 7 -   OPINION AND ORDER

a prescription for hydroxyzine in September 2020 and recommended Plaintiff's referral to a dermatologist in December of 2020. Sundstrom Decl. ¶¶ 6-8. No evidence suggests that NP Sundstrom knew of and deliberately failed to respond to a risk of serious harm.

Finally, Plaintiff faults NPs Price and Sundstrom for failing to institute scabies "protocol" for other AICs housed near Plaintiff and failing to adequately address a scabies outbreak at EOCI. Pl.'s Resp. at 23. However, Plaintiff fails to present evidence that either Defendant was aware of such an outbreak or, if one occurred, that they had the requisite authority to address it and mandate medical treatment for other symptomatic AICs. Price Decl. ¶ 17; Sundstrom Decl. ¶ 9. Plaintiff relies on unsupported and conclusory assertions, and it is well established that "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Comty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

In sum, given the undisputed evidence of record, Plaintiff cannot sustain claims for deliberate indifference against NPs Price and Sundstrom.

## CONCLUSION

Defendants Price and Sundstrom's Motion for Summary Judgment (ECF No. 66) is GRANTED and Plaintiff's claims against them are DISMISSED.

Within thirty days from the date of this Opinion and Order, Plaintiff and the remaining Defendants shall confer and submit a status report and proposed pretrial deadlines.

IT IS SO ORDERED.

DATED this 12th day of January 2024.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge