UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DANIEL MARTIN SLIGHT, IV,                                    Case No. 2:21-cv-00925-MTK

            Plaintiff,                                    **OPINION AND ORDER**

        v.

SUE WASHBURN; G. MORAN;
LELAND P. BEAMER; A. ASTORGA;
M. DAVIES; S. BLOOD; E. SUNDSTROM;
M. PRICE; J. BARRETTE; T. HOLTZ; S.
POWELL; JANE DOE; DUFLOUTH;
S. WHITBREAD; WARREN ROBERTS;
J. BUGHER,

            Defendants.

_____

KASUBHAI, District Judge.

      Plaintiff, an adult in custody (AIC) previously housed at the Eastern Oregon Correctional

Institution (EOCI), brought suit under 42 U.S.C. 1983 alleging that Defendants were deliberately

indifferent to his health and safety by failing to provide adequate medical treatment for a

parasitic infection. Plaintiff also alleges privacy, failure to protect, and retaliation claims arising

from the alleged disclosure of his medical condition and refusal to provide medical care. The

Court previously granted summary judgment in favor of Defendants Price and Sundstrom, and

**- 1 -     OPINION AND ORDER**

the remaining Defendants now move for summary judgment. Upon review of the record and the

parties' arguments, Plaintiff fails to raise a genuine issue of material fact to defeat summary

judgment, and Defendants' motion is GRANTED.

## BACKGROUND

In April of 2019, Plaintiff sought medical attention due to irritation and itching under the

foreskin of his penis. Gaddis Decl. Ex. 1 (Pl. Depo. at 20) (ECF No. 131-4); Beamer Decl. ¶ 4

(ECF No. 131-3). Dr. Beamer, an EOCI physician at the time, prescribed Diflucan, an antifungal

medication. Gaddis Decl. Ex. 1 (Pl. Depo. at 20). Plaintiff's symptoms did not resolve and Dr.

Beamer referred Plaintiff to an outside surgeon, Dr. McBee, for evaluation. *Id.* Ex. 1 (Pl. Depo.

at 23); Beamer Decl. ¶ 4.

Dr. McBee examined Plaintiff and recommended circumcision surgery, and Plaintiff

consented to surgery. Gaddis Decl. Ex. 1 (Pl. Depo. at 28-30). During the circumcision, Dr.

McBee had to cut away part of the foreskin, causing a disfigurement. *Id.* Ex. 1 (Pl. Depo. 105-

106). After the procedure, Plaintiff was prescribed pain medication every four hours "as needed

for moderate pain." Beamer Decl. ¶ 5. Dr. Beamer prescribed post-operative pain medication,

including the narcotic Norco, acetaminophen, and ibuprofen. *Id.* ¶ 6.

On September 21, 2019, Plaintiff complained about an ectoparasitic infection, commonly

known as scabies. Gaddis Decl. ¶ 3 & Ex. 1 (Pl. Depo. at 22-23); Gaddis Decl. Ex. 2 at 1;

Beamer Decl. ¶ 7. The next day, Plaintiff was examined and given a dose of Ivermectin. Gaddis

Decl. Ex. 1 (Pl. Depo. 46-47); Beamer Decl. ¶ 7; *see also* Opinion and Order dated January 12,

2024 (hereinafter Opinion) at 2 (ECF No. 105).

On November 29, 2019, Plaintiff received another dose of Ivermectin. Beamer Decl. ¶ 8.

On December 19, 2019, Plaintiff's symptoms persisted and he was prescribed a short course of

Prednisone to address a possible allergic reaction to the scabies. *Id.* On December 11, 2019 Plaintiff was given a course of Doxycycline after he appeared to have a secondary infection. *Id.*; Opinion at 2.

In early 2020, Plaintiff's infection reoccurred and he was examined, prescribed antibiotics and steroids, and had biopsies taken of his skin. Gaddis Decl. Ex. 1 (Pl. Depo. at 62); Pl.'s Aff. Exs. 14-15, 25-27 (ECF No. 139-1); Opinion at 2. A provider also ordered Plaintiff's clothes to be washed separately with a different detergent. Opinion at 2. In March 2020, Plaintiff reported that his symptoms were improving and the prescription for his topical treatments was renewed. *Id.*

In April 2020, Plaintiff reported a worsening of his symptoms and he was prescribed hydroxyzine, a topical antihistamine. *Id.* at 3.

In May 2020, the Therapeutic Level of Care (TLC) Committee granted a medical provider's request to refer Plaintiff to an outside dermatologist, and in June 2020, medical providers prescribed medication to provide symptomatic relief. Pl. Aff. Exs. 13, 26. In July 2020, an outside dermatologist examined Plaintiff and prescribed a Permethrin treatment regimen. *Id.* Exs. 6-7, 11.

In August 2020, Plaintiff reported that the Permethrin had not completely resolved his symptoms. The attending medical provider ordered a retreatment of Permethrin and Ivermectin and ordered that Plaintiff's clothing and bedding be sealed for three days and washed in hot water. Opinion at 4. In September 2020, Plaintiff was examined due to his persistent itching, and the TLC Committee approved Plaintiff's continued use of hydroxyzine. *Id.*

On October 8, 2020, Plaintiff was seen by another outside dermatologist. Pl. Aff. Ex. 8. The dermatologist again diagnosed Plaintiff with scabies and prescribed Permethrin and

**- 3 -     OPINION AND ORDER**

Ivermectin. *Id.*; Beamer Decl. ¶ 8. The dermatologist also ordered that all of Plaintiff's bedding and clothing be washed in hot water the day after treatment, with the same treatment recommended "for all others onsite who have similar symptoms." Pl. Aff. Ex. 8.

Plaintiff was examined by a medical provider in December 2020. *Id.* Ex. 11; Opinion at 4. In January 2021, Plaintiff received another course of Permethrin and hydroxyzine and his infection apparently resolved. Opinion at 4.

On October 23, 2023, Plaintiff reinjured an old ankle injury and was sent to an outside medical office for imaging. X-rays revealed soft tissue swelling in the ankle with no recent fracture. Beamer Decl. ¶ 10. Dr. Beamer examined Plaintiff the next day and diagnosed a grade II ankle strain and prescribed a walking boot for six to eight weeks and authorized crutches for three days. *Id.* ¶ 11; Gaddis Decl. Ex. 1 (Pl. Depo at 113-116).

Plaintiff expressed his concern with "just being in the boot" and requested physical therapy. Dr. Beamer advised Plaintiff that they would start with the boot and reevaluate his treatment in six to eight weeks. Gaddis Decl. Ex. 1 (Pl. Depo. at 115-116).

On December 20, 2023, Plaintiff was examined by another medical provider. Plaintiff was not wearing the walking boot and requested an ankle brace. Beamer Decl. ¶ 12; *see also* Pl.'s Aff. Ex. 24. Plaintiff's symptoms persisted and he was re-examined monthly. Beamer Decl. ¶ 13. The TLC Committee ultimately approved an MRI and an orthopedic consultation, and in July 2024, Plaintiff had an MRI, which revealed a non-displaced fracture. *Id.* ¶ 14; Pl.'s Aff. Exs. 22, 28-29. Plaintiff's orthopedist recommended no further immobilization and ordered physical therapy. Beamer Decl. ¶ 14. The TLC Committee approved a session of physical therapy. Pl.'s Aff. Ex. 23.

**- 4 -    OPINION AND ORDER**

## DISCUSSION

Plaintiff alleges that Defendants' failure to provide effective treatment for his conditions constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Plaintiff also alleges that Defendants retaliated against him, forced the disclosure of his private medical information, and failed to protect him from threats of violence after the disclosure of his scabies diagnosis. Defendants move for summary judgment on all claims and argue that the undisputed facts fail to show deliberate indifference to Plaintiff's medical needs or any other violation of his rights. Plaintiff opposes Defendants' motion and moves for the appointment of an expert witness and volunteer counsel.

### A.  Motions for Expert Witness and Appointment of Counsel

Plaintiff seeks the appointment of an expert witness to assist him in pursuing his claims and responding to Defendants' Motion for Summary Judgment. The motion is denied.

This Court is not authorized to appoint an expert solely for a party's benefit, even if that party is indigent. *See Snow v. Mar*, 785 Fed. App'x 465, 466 (9th Cir. Nov. 22, 2019) (explaining that "there is no statutory authorization for a court-appointed investigator for civil litigants proceeding in forma pauperis"); *see also Gorton v. Todd*, 793 F. Supp. 2d 1171, 1184 n.11 (E.D. Cal. 2011) (stating that "28 U.S.C. § 1915 does not authorize the court to appoint an expert for plaintiff's benefit to be paid by the court"). Instead, Federal Rule of Evidence 706 permits the appointment of a neutral expert witness to aid the Court in understanding and interpreting complex evidence. Fed. R. Evid. 706; *Gorton*, 793 F. Supp. 2d at 1177 & n.6 (explaining that Rule 706 does not permit the appointment of an expert witness for an indigent prisoners' "own benefit" to prove deliberate indifference).

The facts of this case are not particularly complex, and the relevant subject matter and evidence is not difficult to understand. Importantly, this is not a medical malpractice case, and the issue is not whether Defendants failed to provide care that conformed to acceptable medical practices. *See Thorson v. Bend Mem'l Clinic*, 291 Or. App. 33, 36, (2018) ("It is well established under Oregon law that, '[i]n most medical malpractice cases, expert testimony is required to establish the standard of care.'"). Rather, the issue is whether Defendants deliberately disregarded a known risk of substantial harm. The current record is sufficient to assist the undersigned in understanding Plaintiff's medical condition, the treatment options considered, and the medical care provided.

Plaintiff also renews his motion for appointed counsel to assist in responding to Defendants' motion and to prepare for trial. Notably, Plaintiff filed a ninety-page Response to Defendants' motion contemporaneously with this motion, with witness statements and other documentary evidence, and ably articulated his arguments. Thus, Plaintiff fails to show that the appointment of volunteer counsel is warranted. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009); *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

### B.  Motion for Summary Judgment

To prevail on their motion, Defendants must show that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Defendants must present evidence of record, together with affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If Defendants meet this burden, the burden shifts to Plaintiff to demonstrate the existence of a genuine issue of fact for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see* Fed. R. Civ. P. 56(c)(1).

**- 6 -     OPINION AND ORDER**

The Court must construe the evidence and all reasonable inferences in favor of Plaintiff, as the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). The Court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec*, 475 U.S. at 587 (citation and quotation marks omitted).

1. <u>Deliberate Indifference to Serious Medical Needs</u>

Prison officials and physicians violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference to an AIC's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To sustain this claim, Plaintiff must establish the existence of "a serious medical need" and show that "defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "A 'serious' medical need exists if the failure to treat prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (citation omitted). Deliberate indifference is established when a prison official knew that an AIC faced a "substantial risk of serious harm" and disregarded that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Deliberate indifference to an AIC's serious medical needs may be shown by the denial, delay, or intentional interference with medical treatment or by the manner in which prison officials provide medical care. *Gamble*, 429 U.S. at 104-05; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Where an AIC alleges a delay in receiving medical treatment, the delay must have led to "significant harm." *Hallett*, 296 F.3d at 746. In any case, the indifference to an AIC's

- 7 -     **OPINION AND ORDER**

medical needs must be substantial; inadequate treatment due to negligence, inadvertence, or differences in opinion between AICs and medical personnel do not rise to the level of a constitutional violation. *Gamble*, 429 U.S. at 105-06. A prison official acts with 'deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Id.*

### a. Ectoparasite/Scabies Infection

Plaintiff maintains that Defendants' treatment of his ectoparasitic infection was constitutionally deficient, because they failed to follow accepted "protocol" and inadequately treated Plaintiff and other symptomatic AICs in close proximity to him.[1]

The record reflects that Plaintiff's complaints were frequently addressed, and that EOCI medical providers attempted multiple treatments to resolve his scabies infection, including repeated treatments with Ivermectin and Permethrin, antibiotics, topical creams, and sanitation of his bedding and clothing. Gaddis Decl. Ex 1 (Pl. Depo. at 46-47, 62, 70-72); Beamer Decl. ¶¶ 7-8; Pl. Aff. Exs. 6-8, 11, 13-15, 25-27, 31-32; *see also* Opinion at 2-4. Contrary to the allegations in his Third Amended Complaint, Plaintiff presents no evidence suggesting that Defendants denied, unduly delayed, or interfered with his medical treatment.[2] As such, Plaintiff must show

---

[1] Plaintiff also purports to assert a procedural due process claim arising from the responses to his many grievances about the adequacy of his care. Plaintiff fails to show a constitutional deprivation arising from the denial of his grievances, and AICs have no constitutional right to an effective grievance or appeal procedure. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

[2] Plaintiff's allegations that Defendants Blood, Powell, Astorga, Davies, Barrette, and Holtz denied treatment in February, March, April, May, and December of 2020 are unsupported and contradicted by the evidence of record. *E.g.,* Pl. Aff. Exs. 14, 15, 25, 26.

**- 8 -    OPINION AND ORDER**

that the course of treatment Defendants chose was medically unacceptable under the circumstances and chosen in conscious disregard of an excessive risk to his health. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016). Plaintiff fails to do so.

As noted, Plaintiff was examined regularly, prescribed numerous treatments, and referred to outside dermatologists. Plaintiff nonetheless argues, without supporting evidence, that other AICs in his housing unit were not adequately treated for scabies, allowing the condition to spread and cause reinfection.[3] Plaintiff also complains about the efficacy of his medical treatments, the delay in obtaining an outside referral, and the infrequency of replaced bed linens and clothing. *See, e.g.,* Pl.'s Mem. in Supp. at 8, 12. Plaintiff's assertions, even if construed in his favor, imply negligence rather than deliberate indifference, and negligent conduct does not rise to the level of a constitutional violation. Likewise, a "difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

Further, Plaintiff admits that his interpretation of Defendants' actions or "inaction" was based on his own "opinion" and assumptions rather than facts of which he had personal knowledge. Gaddis Decl. Ex. 1 (Pl. Depo. at 116). For example, Plaintiff alleges that Defendant Duflouth intentionally postponed his dermatologist appointments for no legitimate reason. In his deposition, however, Plaintiff conceded that he did not know why his appointments were delayed

---

[3] Plaintiff offers seven declarations from other AICs in support of allegations about an ectoparasitic outbreak. (ECF No. 144) The declarants aver to facts of which they have no personal knowledge, such as the medical treatment provided to other AICs, and their asserted observations of Plaintiff's condition and his conversation with Sergeant Moran fail to raise genuine issues of material fact to defeat summary judgment.

(notably, during the COVID-19 pandemic) and simply speculated that his appointments were deliberately canceled. *Id.* Ex. 1 (Pl. Depo. 63-64). It is well established that "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Comty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

In sum, the record reflects that EOCI medical providers responded to Plaintiff's complaints and repeatedly provided treatment for his symptoms, even if imperfectly, and Plaintiff presents no evidence plausibly suggesting that any Defendant possessed the necessary culpable state of mind to sustain a claim for deliberate indifference.

### b. Circumcision Surgery

Plaintiff alleges that Dr. Beamer exhibited deliberate indifference to his medical needs by recommending circumcision surgery without advising Plaintiff that his recommendation could be wrong or that Plaintiff had other options.[4] Plaintiff also alleges that Dr. Beamer reduced his pain medication after surgery despite the fact that Plaintiff was still experiencing pain.

It is undisputed that Dr. Beamer referred Plaintiff to Dr. McBee, an outside surgeon who is not employed by the Oregon Department of Corrections, and Dr. McBee performed the circumcision surgery. Roberts Decl. ¶ 5 (ECF No. 131-1); Beamer Decl. ¶ 4. Dr. Beamer, who is not a surgeon, was not involved with the procedure. Gaddis Decl. Ex. 1 (Pl. Depo. 44); Beamer Decl. ¶ 4. Plaintiff admits that Dr. Beamer did not require Plaintiff to undergo the circumcision surgery, and only recommended it, and that Plaintiff could have refused consent to the surgery. Beamer Decl. ¶ 4; Gaddis Decl. Ex. 1 (Pl. Depo. 44-46). Plaintiff also had the opportunity to

---

[4] Plaintiff also purports to assert a substantive due process claim "to be free from unjustified intrusion into the body." Pl.'s Mem. in Supp. at 3. However, no State official "intruded" into his body. An outside surgeon performed the surgery and Plaintiff consented to it. This claim is without factual or legal merit.

consult with Dr. McBee and ask questions about the surgery, and Plaintiff admits that he failed to do so. Gaddis Decl. Ex. 1 (Pl. Depo. 28-30). Given these undisputed facts, Plaintiff cannot demonstrate that Dr. Beamer exhibited deliberate indifference by referring him to an outside surgeon for a procedure to which Plaintiff ultimately consented. To the extent Plaintiff's consent was not informed, it was not due to Dr. Beamer's medical advice.

The record also shows that Dr. Beamer prescribed post-operative pain medication, and Plaintiff presents no evidence showing that Dr. Beamer reduced his medication. Instead, Dr. Beamer changed the pain medication to reflect the available medication at EOCI. Beamer Decl. ¶¶ 5 & 6. Plaintiff's arguments about the medication's efficacy does not suggest the requisite subjective state of mind on the part of Dr. Beamer to show deliberate indifference.

### c. Ankle Injury

Finally, Plaintiff alleges that Dr. Beamer failed to provide adequate treatment for his ankle injury by failing to approve physical therapy and instead prescribing a walking boot and crutches. Plaintiff also avers that Dr. Beamer authorized crutches for only three days

Plaintiff presents no evidence that Dr. Beamer refused to provide treatment or unnecessarily delayed treatment in conscious disregard of a known risk to his health. Rather, Dr. Beamer advised Plaintiff that they would reevaluate his treatment after trying the boot. Gaddis Ex. 1 (Pl. Depo. at 115-116). Dr. Beamer's approach did not disregard a known risk, particularly when Plaintiff's 2018 ankle injury resolved without issue after twelve weeks in a walking boot. Gaddis Decl. Ex. 1 (Pl. Depo. 110). Finally, based on his own testimony, Plaintiff's request to extend authorization for his crutches was granted and he was allowed to use them for several more days. Gaddis Decl. Ex. 1 (Pl. Depo. 117-118).

**- 11 -   OPINION AND ORDER**

2. <u>Medical Privacy</u>

Plaintiff next alleges that Sergeant Moran caused the disclosure of Plaintiff's medical information to other AICs in his housing unit, thus violating Plaintiff's right to medical privacy. *See Norman–Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998) ("The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality."); *Doe v. Beard*, 63 F. Supp. 3d 1159, 1167 (C.D. Cal. 2014) (explaining that prison officials cannot violate an AIC's "right to medical privacy absent some legitimate penological objective").

This claim arises from a conversation between Plaintiff and Sergeant Moran on August 12, 2020, when Plaintiff requested additional clothing and bedding after he was directed to change his clothing for three consecutive days. Villers Decl. Ex. 3 at 5 (ECF No. 131-2); Pl. Aff. Ex. 31. At Plaintiff's request, a correctional official on Plaintiff's housing unit called Sergeant Moran, who was on duty in the clothing room, to ask if Plaintiff could retrieve additional clothing and bedding. Gaddis Decl. Ex. 1 (Pl. Depo. at 79, 83). According to Plaintiff, Sergeant Moran refused such authorization and Plaintiff asked to speak with the sergeant. *Id.* Sergeant Moran asked why Plaintiff needed the additional clothing and bedding and refused to provide them until Plaintiff explained that they were required because of his scabies infection. *Id.* Ex. 1 (Pl. Depo. at 81). Apparently, other AICs were within earshot and Plaintiff claims that they overhead Plaintiff tell Sergeant Moran that he currently had a scabies infection.

It is undisputed that Plaintiff – and not Sergeant Moran – disclosed his scabies diagnosis. Gaddis Ex. 1 (Pl. Depo. 78-84). Plaintiff nonetheless argues that Sergeant Moran "forced" him to disclose it and could have accessed Plaintiff's medical information to confirm the need for extra clothing and bedding. However, Plaintiff presents no evidence that Sergeant Moran had access to

AICs' medical information and Plaintiff admits that he did not know what information Sergeant Moran could access. Gaddis Decl. Ex. 1 (Pl. Depo. at 84). Further, Plaintiff presumably could have communicated the information in another manner – such as a written kyte – or authorized medical providers to provide Sergeant Moran with orders for extra clothing and bedding.

Ultimately, while Sergeant Moran could have handled the situation differently, Plaintiff fails to show that Sergeant Moran personally disclosed his medical information and violated his rights to medical privacy for no legitimate penological purpose.

### 3. Failure to Protect

Plaintiff next alleges that Defendants failed to protect him from assault after AICs learned of his scabies infection. Plaintiff claims that AICs in his unit, fearful that they would contract scabies, began to threaten and harass him.

The Eighth Amendment imposes a duty on prison officials to protect AICs from violence at the hands of other AICs, and officials violate this duty when they act with deliberate indifference to an AICs safety. *See Farmer v. Brennan,* 511 U.S. 825, 833-34 (1994). To sustain this claim, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837. A prison official's deliberate indifference may be established through an "inference from circumstantial evidence" or "from the very fact that the risk was obvious." *Id.* at 842.

On September 23, 2020, Plaintiff submitted a grievance and stated that, after he was "forced" to disclose his scabies infection on August 12, 2020, he "was harassed and threatened by other AICs about my medical condition" and has "felt unsafe due to multiple threats." Pl.'s Aff. Ex. 20. Plaintiff did not identify the harassers and Defendants urged Plaintiff to provide more information about the alleged harassment and threats.

**- 13 -   OPINION AND ORDER**

The record contains no evidence that Plaintiff provided additional information, and Plaintiff did not notify Defendants of further threats or request that specific be action. Villers Decl. Ex. 3. Likewise, no evidence reflects that Plaintiff reported an assault or sought medical attention. Gaddis Decl. Ex. 1 (Pl. Depo. at 88-90). Defendants cannot be liable for deliberately disregarding a known risk when they had limited knowledge of who posed the risk.

To the extent Plaintiff argues that Sergeant Moran should have known that the "forced" disclosure of Plaintiff's diagnosis on August 12, 2020 would lead to harassment, Plaintiff fails to show that Sergeant Moran had actual knowledge of his diagnosis or its potential to result in harm if disclosed. *See, e.g., Beard*, 63 F. Supp. 3d at 1165 (finding that prison officials' disclosure of an AIC's HIV-positive status had "the unique potential, in the prison context, to result in violence" and that "prison officials' deliberate indifference to the risk of such violence is a sufficient mental state to establish a claim under § 1983"). Based on this record, Plaintiff fails to show that Defendants knew of a specific risk of harm and failed to abate that risk.

4.  Retaliation

Finally, Plaintiff alleges that Dr. Beamer retaliated against him by refusing or threatening to refuse medical care in response to Plaintiff's grievances and this lawsuit.

To state a viable claim of First Amendment retaliation, Plaintiff must allege five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

- 14 -   **OPINION AND ORDER**

The sole basis for Plaintiff's claim against Dr. Beamer is his assertion that Dr. Beamer's "demeanor turned hostile" when Plaintiff sought treatment for his ankle injury in October of 2023. Plaintiff alleges that Dr. Beamer looked irritated and said, "I know you," and declined Plaintiff's request to recommend physical therapy. Gaddis Decl. Ex. 1 (Pl. Depo. at 116). During his deposition, Plaintiff admitted that his perception of Dr. Beamer's "hostile" attitude was "just [his] own opinion of how it looked to me" rather than Dr. Beamer's comments, conduct, or treatment. *Id.* Accordingly, Plaintiff presents no evidence that Dr. Beamer denied medical care because of Plaintiff's protected conduct.

## <u>CONCLUSION</u>

For the reasons explained above, Defendants' Motion for Summary Judgment (ECF No. 131) is GRANTED, and Plaintiff's Motions for a Neurological Expert and Appointment of Counsel (ECF Nos. 142, 143) are DENIED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this <u>21st</u> day of March 2025.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge

**- 15 -   OPINION AND ORDER**